Friday, June 3. The Judges delivered their opinions.
JUDGE TUCKER.
The bill charges that. Clarke mortgaged certain lands worth 1,0001. or 1,2001. to the Freelands to secure a debt for which he had also given them his bond; that after Clarke’s death they brought suit against his executors, the complainants, on the bond; that they employed an attorney to defend the suit, to which they filed several pleas, and in particular the plea of plene administraverunt. That when the suit was about to be tried, they with their attorney, and the attorney for the plaintiffs, agreed that the pleas should be relinquished, and a judgment entered when assets; and aver, that *531 having ^fully administered, they would on no other consideration have relinquished those pleas; that they were also impressed with a conviction that the mortgaged lands would have overreached the balance due to the Freelands, who, they allege, offered their testator (as they were informed by him) 1,0001. for those lands; which, however, have since been sold under a decree of foreclosure, and purchased by the mortgagees themselves for 4001. ; that -the Freelands have since instituted a suit upon their executorial bond against them for a devastavit, and pray an injunction, which was granted.
Process appears to have been served on both the Freelands, who are named defendants: but one only answers in the name of both, styling himself sole representative of J. and A. Freeland. No further proceedings were had against the other. A. F. insists that their attorney refused to accept a confession of judgment, when assets, but insisted on a general confession without any qualification whatever, as he was prepared to prove assets; and does not .admit that the executors were under any mistake on that occasion ; nor that the appellants or either of them, either directly or indirectly, made any offer for the land prior to the sale. To this answer the plaintiffs replied generally. Mr. Taylor the attorney for the Freelands, deposes that the confession of judgment was entered unconditionally in consequence of some proposals made by him to the attorney of the executors, who consulted his clients, who thereupon came into Court, to the deponent, when it was expressly agreed by them in presence of their attorney, that if the deponent as attorney for the Freelands would take an unconditional judgment by confession, and let it rest until the mortgaged land could be sold, and credited on it, and take judgments in several other suits, in which he was the attorney prosecuting “when assets,” they, the executors, would then do so, and put an end to any further contest; that he believes they very well understood that they were confessing a judgment which would bind them for the amount thereof; and *that they had, as they stated, sufficient assets to pay, after receiving just credits, with the aid of the mortgaged land; that he well remembers that such were his impressions at the time, or he would not have acceded to their proposals, for which they appeared well pleased, and appeared also from their conversation to have no doubt, but if the land sold tolerably well, that there would be assets enough to meet the balance. The Chancellor perpetuated the injunction as to all but about 671. appearing to be due from them, upon an account stated, to their testator’s estate. From which decree the Freelands have appealed.
I have felt in myself, a strong disposition to affirm the principle upon which the Chancellor must have, proceeded in pronouncing his decree in this cause, by relieving the defendants against the effect of the judgment confessed by them, unconditionally, beyond the assets of their testator, in their hands to be administered. If the real value of the lands were equal to what they state in their bill, it was a reasonable expectation which they cherished that it would either overreach the debt for which the lands were mortgaged, or leave but a small balance to be paid out of the assets in their hands, if the lands should sell even tolerably well; and that they would have enough to meet the deficiency. The creditors having themselves become the purchasers .of the land, if it were in fact worth more than double as much as they gave for it, as is charged in the bill, it seems to me against conscience that they should insist on retaining all the advantages they have acquired by purchasing the lands far under their value, and by an unconditional judgment confessed under such reasonable expectations, as I have before stated. The proof of the value of the lands, it must be confessed, is not made out,. On the other hand, one of the defendants, who, possibly, might have been the one that made the offer to the testator of the appellees, never answered the bill; nor does any reason appear why he has not answered it. Perhaxis the Chancellor erred in proceeding to make a final decree without an answer from that defendant. The decree *which he has pronounced, is not altogether such a one as I could have supposed might have been proper; although I think the principle a good one, that under all the circumstances of this case, the executors ought to be relieved from a judgment confessed under mistake, or misapprehension. There are a number of cases in the books, where relief has been granted upon this ground, though not one perhaps, that goes quite to the extent of the present, if the executors really meant to confess judgment generally. They swear in their bill that they had no such intention; their attorney is deceased; but were he living, I do not know that his testimony would be admissible, or if admissible, could avail them. Upon the whole, I think the merits of this cause are not so fully before this Court, as that we can pronounce any decree upon them: by sending it back to the Court of Chancery, the answer of James Freeland may be got at, and such further light may, perhaps, be thrown upon the merits, that the Court of Chancery may, without injustice to either parly, relieve the appellees from the penalties of a judgment against them for a devastavit.
There is another feature in the cause which may render such a step proper: relief is prayed against a prosecution against them upon their executors’ bond. It appears that a judgment at law was confessed in that suit, a few days after the injunction was awarded, not only by the executors but by their securities also. The latter cannot be charged beyond the assets which came to the hands of the executors, (a) Supposing the executors liable out of their own estates for the full amount of the debt claimed, the securities are still entitled to protection against the judgment obtained against them for all that may remain due above the assets in the executors’ hands. Ought not leave to be given to them to become parties to this suit, that a final decree may be made in the cause, which may ter- *532 mínate the whole contest, instead of leaving them exposed to a judgment, against which they can obtain relief only by instituting a new suit, and perhaps, going over the whole ground again?
*Upon the whole, I think the present decree ought to be set aside, and the cause remanded to the Court of Chancery, for the answer of James Freeland, and such further proceedings to be had'as may enable that Court to pronounce a final decree upon the merits, both in respect to the present parties, and all others who may be interested therein.
JUDGE ROANE.
The answer in this case denies the allegation in the bill respecting the terms on which the judgment was confessed; and states, that that confession was unqualified. This answer is entirely corroborated and supported by the testimony of Mr. Taylor. Unless, therefore, we say that it is not competent to an executor to admit assets and confess an unqualified judgment, we cannot interfere in the case. Besides; this confession was founded on a consideration, namely, the gaining time for the payment of the money, as stated in the deposition of the witness. If the executors were under any mistake touching the state of the assets, it is not shewn that the appellants were any how contributing to produce it: but.it is not shewn that there was any mistake in the business, and the sale of the land may have been affected by a fall in value after the time of the judgment, or by other extraneous circumstances. Upon the whole, although this is, possibly, a hard case, it is also a naked one.
As to the answer of James Freeland, it does not appear by this record that he is still alive: and if it did, it is believed to be very usual for the acting partner of a mercantile house, to answer for the firm in cases of this kind. The answer of the other partner, stating himself to be the acting partner was accepted and replied to by the appellees, and the case went to trial without objection. It was indeed set down for hearing on the motion of the appellants; but this, I presume, is always the case in injunction causes, as the defendants are in pursuit of their money. But if it were regular now to require the answer of the other defendant, cui bono shall it be required? The appellees'^indeed state that some years back, the appellants offered one thousand pounds for the land, which offer was not accepted; and the principle is clear, that an offer not accepted is as if it was never made. If that answer, therefore, were now before us, and ■came fully up to the charge in the bill, it would prove nothing to arrest the judgment; it would not prove (according to the ¡appellees’ own statement,) that the appellants were any how aiding to deceive the appellees touching the value of the land. If that value turned out on the sale to be less than was counted upon, it arose from causes not imputable to the appellants, who are fair purchasers thereof at public auction.
On the ground then that under present circumstances it would not be regular to-arrest this cause for want of that answer; and if it were, that (as far as we can judge from the bill itself) it would not vary the-decision ultimately; I am of opinion to-reject this idea, and that the bill ought to-be dismissed.
JUDGE FLEMING.
This appears to be-a hard case on the part of the appellee; but it seems to have arisen from their own miscalculation, as to the sufficiency of the assets in their hands to discharge the debt, and not from a misconception of the effect of their waiving their plea of fully administered, and confessing an unconditional judgment; with this only qualification, that it should rest until the mortgaged land should be sold, and the amount of the sale be credited on the same.
The affidavit of Mr. Taylor is too pointed and explicit to leave a doubt on my mind but that the executors, acting by the advice of able counsel, thoroughly understood that if the assets in their hands (including what was to arise from the mortgaged premises,) should prove insufficient to satisfy the debt, they made themselves liable for the deficiency out of their own estates.
As to the charge in the bill that 1,0001. had been offered for the land by the appellants, to th'e testator in his lifetime, *there is no proof of the fact; and if there had been it could not have availed them; because an offer made and rejected, is not binding on either party. And there is no suggestion that there was any thing unfair in the sale of the land,, and therefore the circumstance of the mortgagees’ having become the purchasers, cannot with propriety be complained of.
As to the circumstance of James Freeland (one of the partners) not having answered the bill, it might have been good ground for arresting the proceedings until he should have done so; but as no exception was taken on that account, they cannot avail themselves of it in this Court.
I am therefore of opinion that the decree is erroneous, and ought to be reversed, and the appellants allowed to take the benefit of their judgment on the devastavit. If the. securities in the executors’ bond be charged beyond the assets, they may obtain relief in equity.
By the opinion of a majority of the Court, (absent JUDGE LYONS,) the decree of the Superior Court of Chancery reversed; the injunction of the appellees dissolved, and their bill dismissed.
■ GENERAL RULE. — Friday, June 3, 1808. After the end of this present term all causes depending in this Court shall be called in the order in which they stand upon the docket; and such as may be ready for hearing pursuant to the former rules of this Court, shall, unless good cause be shewn to the contrary, be heard in the same order in which they stand upon the docket, until the whole shall be gone through: and the causes which shall be passed over, shall, unless for some very special reason appearing to the Court, be put at the end of the docket of each term.

 L. V. edit. 1794, ch. 93, sect. 33, p. 165.